IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DUNKIN' DONUTS INCORPORATED, )
)
    Plaintiff, )
)
v. ) No. 02 C 1272
)
N.A.S.T., INC., et al., )
)
    Defendants. )

## MEMORANDUM ORDER

After defendants' originally designated expert Daniel Veith ("Veith") had completed his extensive investigation and had generated his Fed. R. Civ. P. ("Rule") 26(a)(2)(B) report ("Veith Report"), which was then delivered to counsel for plaintiff Dunkin' Donuts Incorporated ("Dunkin'"), serious family problems compelled Veith's indefinite retirement from his accounting profession--thus rendering him unavailable to testify at trial. Defense counsel then sought and obtained this Court's permission (without objection by Dunkin's counsel) to designate another accountant as a substitute expert witness. At the same time Dunkin's counsel properly urged--and this Court agreed--that the substitute be only that, prepared to testify in strict conformity with the Veith Report.

Instead defendants' new witness, Craig Greene ("Greene"), produced an entirely new Substitute Expert Report ("Greene Report") that did not conform to any such limitation at all. Dunkin's counsel understandably reacted by filing a document

captioned "Plaintiff's Objections to Substitute Expert Report and Motion To Strike Defendants' Substitute Expert." After defense counsel had filed a response, Dunkin's counsel have now filed an August 5 Reply Brief in support of its motion.

Both of Dunkin's submissions provide an extraordinarily powerful showing of the major differences between the Veith Report and what Greene has proposed. Not only has Greene sought to reinvent the wheel in an impermissible manner in terms of both (1) additional factual and proposed evidentiary assertions and (2) the different opinions that he has tendered, but the Greene Report is also seriously flawed in terms of noncompliance with the detailed requirements of Rule 26(a)(2)(B). Defendants' response fails entirely to address many of the matters carefully spelled out by Dunkin's original submission--and to the extent that defense counsel do speak to other objections raised by Dunkin', their attempted explanations are totally unconvincing.

When the 1993 amendments to Rule 26 inaugurated the Rule 26(a)(2)(B) mandatory expert report, importantly including a carefully-spelled-out designation of the comprehensive required contents of such reports, the express purpose of that new requirement was to pin each expert witness to a defined position known to the adversary in advance of trial. As the fine article in the American Bar Association's <u>Litigation</u> magazine authored by Gregory Joseph, <u>Trials, Cross Examination, Winning Expert</u>

2

Approaches, 28 Litigation 20 (2002) explains:

> The 1993 amendments to the FRCP introduced a new approach to avoiding trial by surprise, inaugurating the mandatory expert report of Rule 26(a)(2)(B). This report is comprehensive in nature, unlike the prior expert interrogatory answers that, before 1993, were the sole method of obtaining written expert discovery (and that in substance largely consisted of circumlocutions for "my side should win"). The mandatory expert report introduced in 1993 is intended to obviate the need for expert depositions and, therefore, must precede any expert deposition under Rule 26(b)(4)(A).

Indeed, author Joseph went on to emphasize that latter important corollary to the new Rule and its purpose (id. at 21):

> If you really intend to try your case, you ought to think long and hard about whether you want to take that expert deposition. Why? Not only because the 26(a) report freezes experts' testimony to their reported opinions and sources--and thus eliminates the need for a deposition to accomplish that--but also because taking a deposition can actually liberate experts to expound far beyond the bounds of their reports. If an expert volunteers new or different opinions, data, or exhibits in a deposition, that cures their omission from the expert's Rule 26(a) report. The automatic preclusion remedy of Rule 37(c)(1) will no longer apply because there is a carve-out from the preclusion remedy in Rule 37(c)(1) if the omitted expert testimony has "otherwise been made known to the other parties during the discovery process or in writing," under Rule 26(e)(1). An expert deposition is a prime example of "ma[king] known" the expert's opinion "during the discovery process."
>
> There are two lessons in this. First, you may well be better off not deposing the adverse expert. You have the report. It must set forth all facts, opinions, and exhibits the expert plans to use. If the expert attempts to insinuate new facts or opinions that are not contained in the Rule 26(a) expert report, those new items are presumptively excluded under Rule 37(c)(1). There is a separate tactical angle as well. If you do not depose, you will be an unknown quantity

3

to the expert. You will also have given no prior
signals as to where your cross-examination is likely to
go. The expert cannot bone up on what she does not
expect.

Second, if you decide to take an expert deposition, you
must be careful what you ask. You may open the door to
testimony that would otherwise be precluded under Rule
37(c)(1). There is, to be specific, considerable
downside in asking common deposition questions designed
to ensure that no unexplored opinions exist--like the
traditional catch-all question "Do you have any other
opinions in this case that we haven't discussed?" You
generally don't want to know the answer to that
question. If you don't ask it and the opinions are not
provided in the report, the deposition, or otherwise
"in writing" under Rule 26(e)(1), the undisclosed
opinions are presumptively excluded under Rule
37(c)(1).

Defendants' new submission--the Greene Report--flouts the very purpose of the Rule. They cannot be permitted thus to take advantage of Veith's unfortunate circumstances by subverting the underlying principle of Rule 26(a)(2)(B) as they have sought to do. Accordingly the Greene Report will play no role in this litigation, either as a document or as a source of testimony.

At the same time, Dunkin's further effort to bar Greene's testimony entirely would represent an unacceptable penalty for a circumstance-- Veith's unavailability--over which defendants had no control. Instead the posture of the case at trial will be the same as if Veith had not been knocked out of commission, with Greene available as a defense witness to provide testimony that conforms precisely to the Veith Report (but *not* beyond, or in contravention of, that report). In that respect, of course,

4

Dunkin's counsel will be precluded from cross-examining Greene as to whether he himself may disagree with any of the Veith conclusions, nor may Dunkin's counsel draw upon the Greene Report as a basis for possible impeachment of Greene as an opinion witness.[1]

This action is set for a telephonic status hearing at 8:45 a.m. August 23, 2005. At that time the procedures and scheduling for the trial of the case will be discussed.

                                              _____
                                              Milton I. Shadur
                                              Senior United States District Judge

Date: August 10, 2005

---

[1] In short, for all purposes it will be just as though no Greene Report had ever been produced.

5