IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DUNKIN' DONUTS INCORPORATED,    )
                                )
              Plaintiff,        )
                                )
      v.                        )   No. 02 C 1272
                                )
N.A.S.T., INC., et al.,         )
                                )
              Defendants.       )

## MEMORANDUM ORDER

Counsel for Dunkin' Donuts Incorporated ("Dunkin' Donuts") have just tendered their final submission in support of their Fed. R. Civ. P. 56 motion for summary judgment on the remaining counterclaims in this action, including as part of that submission a motion for leave to exceed the 15-page limitation on briefs that this District Court's LR 5.2(b) imposes (as tendered, the text of Dunkin' Donuts' reply memorandum, exclusive of its table of contents, runs 16 pages). Although this Court does not recall having ever denied leave to file an oversized brief and it will not do so here, in this instance it is constrained to comment a bit on counsel's filing.

Interestingly (and surprisingly given its purpose), LR 5.2(b) sets its standards only in terms of type size and line spacing, even though a choice of fonts can make a great deal of difference in terms of cramming extra content into a specified

number of pages.[1] Thus even if Dunkin' Donuts' memorandum had conformed strictly to the LR, the 16 pages of that document would have occupied over 23 pages if typed in this order's font.

But the memorandum dos not conform to the LR in at least one respect. As its page 5 (Ex. 2 to this order) clearly shows, its footnotes are not in 11-point type as required. As for the text of the memorandum, it appears to be in the required 12-point type, while the line spacing appears to satisfy the 1-1/2 space requirement.

What inspires any lawyer to consider such techniques? Is it because of some concern that if a conventionally prepared brief ran over 20 pages the judge would deny leave to file? If not, then why do it? And if so, that makes the effort problematic.

In any event, this Court has not been unaware of the true real-world length of Dunkin' Donuts' memorandum. It nonetheless grants leave to file the oversized brief, but with this message to counsel for Dunkin' Donuts.

                                        _/s/ Milton I. Shadur_
                                        Milton I. Shadur
                                        Senior United States District Judge

Date: November 9, 2005

---

[1] Contrast this opinion's first paragraph, which occupies 11 lines of type, with the reproduction of that paragraph at the top of Ex. 1, which also meets the LR 5.2(b) criteria, but covers only 7 lines. To be sure, the type font in that reproduction is not identical to that in the Dunkin' Donuts memorandum, but it is close enough to provide an effective analogy.

2

Counsel for Dunkin' Donuts Incorporated ("Dunkin' Donuts") have just tendered their final submission in support of their Fed. R. Civ. P. 56 motion for summary judgment on the remaining counterclaims in this action, including as part of that submission a motion for leave to exceed the 15-page limitation on briefs that this District Court's LR 5.2(b) imposes (as tendered, the text of Dunkin' Donuts' reply memorandum, exclusive of its table of contents, runs 16 pages). Although this Court does not recall having ever denied leave to file an oversized brief and it will not do so here, in this instance it is constrained to comment a bit on counsel's filing.

```
Counsel for Dunkin' Donuts Incorporated ("Dunkin' Donuts")
have just tendered their final submission in support of their
Fed. R. Civ. P. 56 motion for summary judgment on the remaining
counterclaims in this action, including as part of that
submission a motion for leave to exceed the 15-page limitation on
briefs that this District Court's LR 5.2(b) imposes (as tendered,
the text of Dunkin' Donuts' reply memorandum, exclusive of its
table of contents, runs 16 pages). Although this Court does not
recall having ever denied leave to file an oversized brief and it
will not do so here, in this instance it is constrained to
comment a bit on counsel's filing.
```

| | |
|---|---|
| First paragraph: | Line spacing 1-1/2<br>Times New Roman font<br>12 point |
| Second paragraph: | Line spacing 1-1/2<br>Courier font<br>12 point |

EXHIBIT 1

specified shop address. Exs. 1A-D ¶¶ 1.A, 1.0, 1.1. As a result, Cherian suffered absolutely no damages with respect to his desire to remodel or relocate any of his shops.[2] *Id.*

Cherian offers absolutely no support regarding his related claim that *unidentified* "[p]otential buyers, lenders and investors knew from the pending litigation that Dunkin was seeking to terminate the franchised business." Opp. at 10. Nonetheless, Cherian is correct that, in the event the Court were to enforce the termination for good cause shown, "he had no business to sell." Opp. at 10. In any event, Cherian's only "proof" that he was prevented from selling his shops improperly discloses the content of "settlement discussions" that are inadmissible under Rule 408. Cherian Aff. ¶ 22; Fed. R. Evid. 408. However, to the extent that he has "opened the door" to such settlement discussions, his own Affidavit directly contradicts his false claim that "efforts by Cherian to sell the business to a third-party would have been futile." Opp. at 10. *See also* Cherian Aff. ¶ 22 ("*During settlement discussion*, I sought approval from Dunkin for a sale of my business, but Dunkin would not approve a transfer *except for an amount and under conditions that were unacceptable to me.*") (emphasis added). Thus, by Cherian's own admission, Dunkin' did offer him an opportunity to sell the shops, but he voluntarily declined to sell them because he did not like the specific terms proposed. *Id.* It is thus undeniably false that Dunkin' "prevented Cherian from being able to relocate, remodel or sell his business" or otherwise caused him any damages. Opp. at 10.

Cherian has done nothing but speculate about unsubstantiated "pie in the sky" projections regarding "profits that his business would have earned 'but for' Dunkin's breach." Opp. at 10. Contrary to the Seventh Circuit's guidance, Cherian has "just dreamed" his damages, rather than *proving* them. *MindGames, Inc. v. Western Publ'g Co.*, 218 F.3d 652, 658 (7th Cir. 2000). Indeed, instead of citing evidence, reliable data, or mathematical calculations, Cherian is content to rest on self-serving conjecture pulled completely out of thin air:

> If I had been able to go forward with my relocation plans, gross sales at the satellite shops would have increased at least an additional *25 to 50 percent* over the ordinary annual market increases. If I had been able to only remodel and not relocate, gross sales at the satellite shops would have increased at least *15 to 25 percent* over the ordinary annual market increases.

---

[2] Cherian's suggestion that his damages include the "loss of his interest" in the "good will in the business" is without merit. Opp. at 15. The Franchise Agreements make it unmistakably clear that the parties expressly agreed that "any and all goodwill . . . inures directly and exclusively to the benefit of DUNKIN'." Exs. 1A-D ¶¶ 7.B, 7.0. Because he never had any *legally cognizable* property interest in goodwill, it is not a viable basis for damages -- as a matter of law. Opp. at 15. Moreover, he is unable to assign any numerical value to goodwill damages.

5    EXHIBIT 2